IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

FRANCISCO RIVERA-MUÑIZ, et al.,

    Plaintiffs,

    v.

HORIZON LINES INC., et al.,

    Defendants.

Civil No. 09-2081 (GAG)

**OPINION AND ORDER**

    Plaintiffs, nine domiciliaries of Puerto Rico and their respective conjugal partnerships, bring this class action on behalf of themselves and similarly situated consumers in Puerto Rico against Defendants, Horizon Lines Inc. ("Horizon"); Horizon Lines LLC; Horizon Logistics LLC; Horizon Lines of Puerto Rico Inc.; Sea Star Lines LLC ("Sea Star"); and Crowley Liner Services, Inc. ("Crowley"). (See Docket No. 62.) Plaintiffs allege price-fixing, conspiracy to fix prices, and unfair trade practices in violation of the Puerto Rico Antitrust Act ("PRAA"), P.R. Laws Ann. tit. 10, §§ 257–276 (2009); violation of the Puerto Rico Consumer Class Action Act ("CCAA"), P.R. Laws Ann. tit. 32, §§ 3342–3343 (2009); tortious conduct, P.R. Laws Ann. tit. 31, § 5141 (2009); and unjust enrichment, P.R. Laws Ann. tit. 31, § 7. (See id.) Defendants severally move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them. (See Docket Nos. 70; 72; 73.)

**I.     Legal Standard**

    When considering a motion to dismiss under Rule 12(b)(6), the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, --- U.S. ---, 129

**Civil No. 09-2081 (GAG)**                                         2

S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.' " Iqbal, 129 S. Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

In sum, the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. at 1949-50 (citing Twombly, 550 U.S. at 555-56). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Iqbal 129 S. Ct. at 1950.

**II.     Relevant Factual and Procedural Background**

The court derives the following allegations from Plaintiffs' "Second Consolidated Amended Class Action Complaint" (Docket No. 62). Plaintiffs are residents of Puerto Rico who regularly purchase consumer goods. Defendants are shipping companies who provide cabotage between the U.S. mainland and Puerto Rico ("Puerto Rican cabotage").

Horizon Lines LLC, a Delaware company, maintains a principal place of business in North Carolina and operates twenty-one U.S.-flagged container vessels between five ports in the U.S. mainland, Puerto Rico, Hawaii, Alaska, Guam, and Micronesia. Horizon Logistics LLC, a Delaware company, maintains a principal place of business in North Carolina and manages ocean shipping. Horizon Lines of Puerto Rico Inc., a Delaware corporation, maintains a principal place of business in Puerto Rico and operates a marine terminal in San Juan, Puerto Rico. Horizon Lines LLC, Horizon Logistics LLC, and Horizon Lines of Puerto Rico Inc. are wholly-owned subsidiaries of Horizon, a Delaware corporation that maintains a principal place of business in North Carolina. Through its subsidiaries, Horizon provides approximately 35% of Puerto Rican cabotage.

Sea Star is a Delaware corporation with its principal place of business in Florida. Sea Star provides seaborne transport between the U.S. mainland, Puerto Rico, the U.S. Virgin Islands, and

**Civil No. 09-2081 (GAG)**                3

other islands in the Lesser Antilles. Sea Star accounts for approximately 21% of the Puerto Rican cabotage market.

Crowley is a Delaware corporation with its principal place of business in Florida. Crowley operates thirty-five vessels and provides regular marine transportation services between the U.S. mainland and ports in Central America, Puerto Rico, and elsewhere in the Caribbean Sea. Crowley accounts for approximately 31% of the Puerto Rican cabotage market.

At least 80% of all goods consumed in Puerto Rico are shipped from the U.S. mainland by sea and air. Because of U.S. law governing cabotage, which imposes extensive requirements for vessels engaged in maritime shipping between U.S. ports, it is difficult for new firms to enter the market. While Defendants presently control 87% of Puerto Rican cabotage, Trailer Bridge Inc. ("Trailer") services the remaining 13% of the market. Trailer is not a party to the instant case.

From 1994 to 2003, rates for freight shipping between the U.S. mainland and Puerto Rico declined by 30% due to overcapacity in shipping services. From May 2002 through April 2008, the capacity of Puerto Rican cabotage has remained unchanged. Rather than increasing capacity in their freight carriage services, Defendants agreed to carry one another's freight whenever demand for cabotage exceeded the capacity of one of the firms. Since early 2006, Puerto Rico has experienced an economic recession and a decreased demand for consumer products. The volume of Puerto Rican cabotage decreased by somewhere between 8% to 12% in 2006.

Since 2003, shipping rates charged by Defendants have uniformly increased by 9%. In May 2003, Defendants uniformly set bunker fuel surcharges at about $225 per container, which increased to $280 per container in early April 2005, and increased again to $310 per container a few weeks later. Defendants separately increased their fuel surcharges by $15 in the summer of 2006. In May 2007, all three firms increased their rates again by $25.

Defendants agreed to allocate amongst themselves customers who require Puerto Rican cabotage. Defendants agreed to fix shipping rates and other fees for freight carriage in this market. In 2008, the U.S. Department of Justice indicted several of Defendants' officers for violations of

**Civil No. 09-2081 (GAG)**                                    4

federal antitrust laws. Some of these officers have pleaded guilty in a parallel federal criminal case.

On October 19, 2009, Plaintiffs initiated the instant case in federal district court (Docket No. 1) after the direct purchasers of cabotage commenced their case against Defendants for antitrust violations (see Civil No. 08-1960 (DRD)). Plaintiffs' amended complaint brings claims in diversity under Puerto Rico law.[1] (See Docket No. 62.) On April 9, 2010, Defendants moved separately for dismissal. (Docket Nos. 70; 72; 73.) Plaintiffs opposed the motions. (See Docket Nos. 86; 88.) Defendants jointly replied (see Docket No. 102), and Plaintiffs sur-replied (see Docket No. 105).

**III.    Discussion**

    **A.    Private Action for Antitrust Violations**

Defendants challenge Plaintiffs' antitrust claims on the grounds that (1) indirect purchasers of cabotage lack the necessary standing to sue for antitrust violations; (2) Plaintiffs' allegations are insufficient to state a legally cognizable claim; (3) Plaintiffs cannot establish the necessary standing under Article III of the U.S. Constitution to bring suit in federal court; (4) the "filed rate doctrine" bars this suit; and (5) the Puerto Rico antitrust statute does not apply to interstate commerce. (See Docket Nos. 70; 72; 73.)

        **1.    Indirect-Purchaser Standing**

Defendants point to federal precedents that bar indirect purchasers from bringing suit under federal antitrust law. (See Docket Nos. 70; 72; 73.) PRAA is modeled after federal antitrust statutes. Pressure Vessels of P.R., Inc. v. Empire Gas de P.R., 137 P.R. Dec. 497, 509-18 (1994).[2] Compare P.R. Laws Ann. tit. 10, §§ 258, 260, with 15 U.S.C. §§ 1-2. Although federal jurisprudence has implied special standing requirements into private antitrust actions, see Kansas v. Utilicorp United, Inc., 497 U.S. 199, 207-08 (1990) (rejecting antitrust standing for indirect

---

[1] Under 28 U.S.C. § 1332(d)(2), federal district courts have jurisdiction over class actions where the amount in controversy exceeds $5,000,000 and any member of the class is diverse in citizenship from any defendant.

[2] For English translation, www.westlaw.com (Enter "1994 P.R.-Eng. 909,547" into search by citation).

**Civil No. 09-2081 (GAG)**                    5

purchasers), Puerto Rico explicitly rejects any such limitations, see Pressure Vessels of P.R., 137 P.R. Dec. at 518-20 ("We hold that the plaintiff need not establish anything beyond a factual causal relation between the injury and the violation . . . ."). Because Puerto Rico liberally construes its standing requirements in private antitrust cases, see id. at 519, it is immaterial whether Plaintiffs are direct or indirect purchasers of cabotage services.[3] Accordingly, this court finds that Plaintiffs have standing to sue under PRAA.

### 2. Failure to State a Claim

Defendants contend that Plaintiffs fail to state a claim under PRAA. (See Docket Nos. 70; 72; 73.) PRAA protects free competition by outlawing monopolization, P.R. Laws Ann. tit. 10, § 260, and unreasonable agreements in restraint of trade, see id. § 258. Plaintiffs direct the court's attention to section 2 of PRAA, id., which is modeled after section 1 of the Sherman Act. See Pressure Vessels of P.R., 137 P.R. Dec. at 509-12. To run afoul of this prohibition, defendants must form an agreement that unreasonably restrains commerce in Puerto Rico or any subdivisions within the Commonwealth. Id. at 509. Following federal precedents, Puerto Rico recognizes certain types of agreements as unreasonable per se, such that defendants have no opportunity to justify the conduct. Id. at 510 n.5 (listing price-fixing and horizontal market allocation among "types of conduct that can be deemed unreasonable per se").

Plaintiffs who suffer injury as a result of such violation may bring suit to vindicate their rights. P.R. Laws Ann. tit. 10, § 268(a). Puerto Rico interprets these elements of causation and injury in light of its civil-law tradition for torts. See Pressure Vessels of P.R., 137 P.R. Dec. at 520. Under the civil-law theory of "adequate causation," a defendant is liable where his conduct "ordinarily produces [the alleged injury] according to the general experience." Marital Com'y of Luis Valldejuli Aboy & Margarita López Valldejuli v. Jerónimo Corp., 3 P.R. Offic. Trans. 179, 186 (1974) (quoting J. Santos Briz, Derecho de Daños, in Editorial Revista de Derecho Privado 215

---

[3] For cases in diversity, this court must defer to the decisions of the Puerto Rico Supreme Court on matters relating to Puerto Rico law. See Rodríguez v. Suzuki Motor Corp., 570 F.3d 402, 406 (1st Cir. 2009).

**Civil No. 09-2081 (GAG)**                                    6

(1963)).

Plaintiffs accuse Defendants of conspiring to fix prices and allocate customers of maritime cabotage. (See Docket No. 62 at 14-25.) Plaintiffs allegedly suffered indirect harm as consumers of goods because Defendants' anticompetitive conduct elevated the prices of goods that they shipped to Puerto Rico. (See id. at 28-29.) As price-fixing and market allocation are unreasonable agreements as a matter of law, see Pressure Vessels of P.R., 137 P.R. Dec. at 510 n.5, the relevant inquiry is whether Defendants' conduct caused the harm allegedly suffered by Plaintiffs.[4]

Under federal law, Puerto Rican cabotage is restricted to shipping firms who meet stringent requirements for crew members' citizenship, citizenship of vessels' owners, and construction of vessels within the United States. See 46 U.S.C. §§ 8103, 12101–12152. According to Plaintiffs, the law in practice limits competition to four firms because of the difficulty for new entrants to enter into the relevant market. (See Docket No. 62 at 11-12.) At present, Defendants control 87% of the local cabotage market. Although Trailer conceivably provides alternate transportation and serves 14% of the market, shipping rates allegedly increased despite Trailer's participation in the market. (See Docket No. 62 at 22-23.) As competition by Trailer apparently failed to moderate freight prices, it is plausible that consumers like Plaintiffs purchased consumer goods at elevated prices because of supracompetitive shipping rates. While pricing of consumer goods is subject to myriad influences besides shipping costs, the court is unable to say at this stage that Plaintiffs suffered no harm from Defendants' alleged conduct. Therefore, the court finds that Plaintiffs state a legally cognizable claim for relief under P.R. Laws Ann. tit. 10, § 258.

### 3.     Standing Under Article III

Besides contesting Plaintiffs' standing to sue under antitrust law, Defendants challenge

---

[4] Defendants point to recent federal precedents dismissing antitrust actions for failure to allege a plausible agreement in restraint of trade. (See Docket Nos. 72; 73.) In Twombly, the U.S. Supreme Court found that the complaint failed to allege sufficient circumstantial facts to infer the existence of an illegal agreement. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553-70 (2007). The Court held that a mere allegation of consciously parallel conduct between defendants and scant additional details are not enough to establish such an agreement. Id. at 556-57. By contrast, in the instant case, Plaintiffs refer to direct evidence of Defendants' criminal conspiracy to engage in a price-setting cartel. (See Docket No. 62 at 14-21.) Accordingly, Defendants' reliance on Twombly is unavailing.

**Civil No. 09-2081 (GAG)**                              7

Plaintiffs' standing to invoke federal jurisdiction under Article III of the U.S. Constitution. (See Docket Nos. 70; 72; 73.)

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

The foregoing analysis of the sufficiency of Plaintiffs' pleadings with respect to their claim under the PRAA applies with equal force here. Therefore, Plaintiffs have shown an injury that is fairly traceable to Defendants' anticompetitive conduct. Furthermore, Plaintiffs' alleged injury is redressible by monetary recovery from Defendants. Accordingly, the court finds that Plaintiffs may invoke federal judicial power.

### 4.     Filed Rate Doctrine

Defendants argue that the filed rate doctrine bars this lawsuit. (See Docket Nos. 70; 72; 73.) Under this doctrine, a carrier engaged in maritime shipping may not be held liable in a private federal antitrust action when the carrier charges rates for freight that are consistent with approved rates filed with a relevant federal regulatory commission. U.S. Navigation Co. v. Cunard S.S. Co., 284 U.S. 474, 480-86 (1932). The reasonableness of such filed rates "is within the exclusive preliminary jurisdiction" of the relevant commission. Id. at 485. The U.S. Supreme Court has confirmed the continuing vitality of the doctrine under federal antitrust law. See, e.g., Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 221-23 (1998).

The First Circuit has not squarely decided whether the filed rate doctrine applies where a defendant's rates deviated from the filed rate. See Town of Norwood v. New Eng. Power Co., 202 F.3d 408, 419-20 (1st Cir. 2000) (noting that filed rate doctrine may apply where agency actually ruled on a rate). However, the Ninth Circuit has suggested that the doctrine does not apply under such circumstances. See E. & J. Gallo Winery v. EnCana Corp., 503 F.3d 1027, 1048 (9th Cir. 2007) (declining to extend filed rate doctrine to rates that were not approved by federal agency).

Even if rates are subject to the supervision of a federal regulatory body, a defendant may only

**Civil No. 09-2081 (GAG)**                               8

raise this argument as an affirmative defense. See id. at 1039 n.11 (noting that filed rate doctrine is typically raised as affirmative defense in private antitrust litigation). The federal district court may not dismiss a complaint on the basis of an affirmative defense unless the defense is apparent from the face of the complaint itself. Jones v. Bock, 549 U.S. 199, 215-16 (2007).

In the case at bar, Plaintiffs' complaint does not mention whether Defendants filed their shipping rates with federal regulatory bodies. (See Docket No. 62.) Therefore, the court has no basis to determine whether a relevant federal agency approved Defendants' rates. Accordingly, the court cannot apply the filed rate doctrine to bar Plaintiff's claim at this juncture.[5] See Jones v. Bock, 549 U.S. at 215-16; E. & J. Gallo Winery, 503 F.3d at 1039 n.11, 1048.

### 5.  Intrastate Commerce

Citing the text of PRAA, Horizon and Sea Star argue that the law limits its scope to commerce within Puerto Rico. (See Docket Nos. 70; 73.) The statute outlaws "[e]very contract, combination in the form of trust or otherwise, or conspiracy in unreasonable restraint of trade or commerce in the Commonwealth of Puerto Rico or in any section thereof," P.R. Laws Ann. tit. 10, § 258, and monopolization and conspiracies to monopolize "any part of the trade or commerce in the Commonwealth of Puerto Rico, or in any section thereof," id. § 260.

The court finds no decisions in Puerto Rico limiting the application of this statute to intrastate commerce. In light of the liberal construction of the standing requirements under PRAA, see Pressure Vessels of P.R., 137 P.R. Dec. at 518-20, it is entirely possible that Puerto Rico courts would apply the statute to regulate interstate commerce. However, the Puerto Rico Supreme Court has not expressed its opinion on this issue, which is dispositive of the instant case, and which may have portentous ramifications for interstate commerce with Puerto Rico. Because the territorial

---

[5] In support of dismissal, Defendants point to a similar case in another federal district. (See Docket Nos. 70; 72; 73.) In that case, the district court dismissed the complaint for the plaintiffs' failure to plead the inapplicability of the filed rate doctrine, without inquiring into the consistency of charged rates with filed rates. See In re Hawaiian & Guamanian Cabotage Antitrust Litig., 647 F. Supp. 2d 1250, 1265-67 (W.D. Wash. 2009). That decision appears to conflict with the controlling precedent in its circuit, which does not apply the doctrine if the rates at issue have not been approved by a relevant federal agency. See E. & J. Gallo Winery v. EnCana Corp., 503 F.3d 1027, 1048 (9th Cir. 2007).

**Civil No. 09-2081 (GAG)**                                           9

scope of PRAA is a paramount matter of public policy for Puerto Rico, this court finds that certification of the question to the Puerto Rico Supreme Court is the proper course. See P.R. Laws Ann. tit. 4, app. XXI-A R. 25 (1996) (authorizing Puerto Rico Supreme Court to entertain certification of questions from other jurisdictions); Romero v. Colegio de Abogados de P.R., 204 F.3d 291, 305-06 (1st Cir. 2000) (ordering federal district court to certify question to Puerto Rico Supreme Court to avoid unnecessary resolution of unsettled matter of Commonwealth law).

### B.    Class Action Statute

Horizon and Sea Star argue that Plaintiffs may not bring suit under the CCAA itself because the statute does not create substantive rights. (See Docket Nos. 70; 73.) CCAA permits private class action lawsuits to recover for antitrust violations. See P.R. Laws Ann. tit. 10, § 3342. The First Circuit has held, however, that CCAA does not create substantive rights and therefore cannot be the basis for an independent cause of action. Díaz-Ramos v. Hyundai Motor Co., 501 F.3d 12, 15-16 (1st Cir. 2007). Rather, it is a procedural device that enables a plaintiff to sue on behalf of a class of similarly situated persons and himself to vindicate substantive rights created by other statutes. See id. The court therefore dismisses Plaintiffs' claim under CCAA.

### C.    Unfair Trade Practices

Horizon contends that the provision for private lawsuits under PRAA does not extend to the prohibition against unfair trade practices. (See Docket No. 70.) According to that statute, private plaintiffs may recover for violations of PRAA, except for sections 259 and 261, which pertain to unfair trade practices and mergers and acquisitions, respectively. P.R. Laws Ann. tit. 10, § 268(a). In other words, private plaintiffs may not sue for alleged unfair trade practices. See id.; Díaz-Ramos, 501 F.3d at 15, 17. Accordingly, the court dismisses Plaintiffs' claim for unfair trade practices.

### D.    Statute of Limitations for Torts

Defendants maintain that the relevant statute of limitations bars Plaintiffs' tort claims. (See Docket Nos. 70; 72; 73.) Puerto Rico law authorizes recovery for an injury inflicted through a defendant's fault or negligence. P.R. Laws Ann. tit. 31, § 5141. A plaintiff must bring suit within one year "from the time the aggrieved person had knowledge thereof." Id. § 5298(2). "The law of

**Civil No. 09-2081 (GAG)** 10

Puerto Rico treats a person as being aware of all that, having awareness constituting notice, that person would have been likely to come to know through the exercise of care." Rodríguez-Suris v. Montesinos, 123 F.3d 10, 16 (1st Cir. 1997).

Defendants contend that Plaintiffs had notice of the relevant facts in this case by either April 19, 2008, when the criminal investigation against Defendants' officers became public, or October 1, 2008, at latest, when several of Defendants' officers pleaded guilty to charges relating to the investigation. (See Docket Nos. 70; 72; 73.) The court takes judicial notice of the fact that criminal investigations against Defendants were reported in the press in late April and May 2008. See e.g., Horizon Lines in Antitrust Investigation, Charlotte Bus. J., Apr. 18, 2008, available at http://www.bizjournals.com/charlotte/stories/2008/04/14/daily52.html (last accessed Sept. 1, 2010); Feds Investigating Crowley, Sea Star in Antitrust Probe, Jacksonville Bus. J., Apr. 18, 2008, available at http://www.bizjournals.com/jacksonville/stories/2008/04/14/daily41.html (last accessed Sept. 1, 2010); Yaisha Vargas, Demanda en Puerto Rico por precios de carga marítima, CentroTampa.Com (Associated Press) (May 8, 2008), http://www2.centrotampa.com/ap-espanol/2008/may/08/demanda-en-puerto-rico-por-precios-de-carga-mart1 (last accessed Sept. 2, 2010). Because Plaintiffs are charged with notice of these reports in the media, see Rodríguez-Suris, 123 F.3d at 16, the statute of limitations ran from that time, and the statutory period ended in May 2009. As Plaintiffs did not commence this case until October 19, 2009 (Docket No. 1), the statute of limitations bars Plaintiffs' tort claims.

### E.    Unjust Enrichment Under Civil Law

Horizon argues that Plaintiffs' claim for unjust enrichment is precluded by the availability of other remedies under Puerto Rico law. (See Docket No. 70.) Under the civil law of Puerto Rico, "[w]hen there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration." P.R. Laws Ann. tit. 31, § 7. Under this civil-law doctrine of equity, a plaintiff may recover for unjust enrichment in an action de in rem verso. See Snyder v. Champion Realty Corp., 631 F.2d 1253, 1254 n.2 (5th Cir.

**Civil No. 09-2081 (GAG)**                                11

1980) (citing analogue to P.R. Laws Ann. tit. 31, § 7 under Louisiana Civil Code). However, actions for unjust enrichment are subsidiary to other remedies provided by law and is unavailable if the plaintiff may seek other forms of relief. See P.R. Laws Ann. tit. 31, § 7; Karon Bus. Forms, Inc. v. Skandia Ins. Co., 80 F.R.D. 501, 506 (D.P.R. 1978). Because PRAA affords a remedy to private litigants who are injured by antitrust violations, see P.R. Laws Ann. tit. 10, § 268, Plaintiffs may not simultaneously seek relief under the theory of unjust enrichment.

**IV.     Conclusion**

In view of the foregoing, the court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss (Docket Nos. 70; 72; 73). This court **ABSTAINS** from deciding Plaintiffs' claim for an unreasonable agreement in restraint of trade under P.R. Laws Ann. tit. 10, § 258 (see Docket No. 62) pending certification to the Puerto Rico Supreme Court. See Romero, 204 F.3d at 305-06 (ordering abstention pending resolution of certified issue). All other claims are **DISMISSED WITH PREJUDICE**.

The court **CERTIFIES** the following question to the Puerto Rico Supreme Court:

> Does the Puerto Rico Antitrust Act, P.R. Laws Ann. tit. 10, §§ 257–276, apply to commerce between the Commonwealth of Puerto Rico and locations outside the Commonwealth?

The court **ORDERS** Defendants to translate this opinion into the Spanish language and to file such translation with this court by **September 15, 2010,** for the purpose of certification. A formal certification to the Puerto Rico Supreme Court shall issue forthwith.

**SO ORDERED.**

In San Juan, Puerto Rico this 3rd day of September, 2010.

*s/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge